680

RENE FUSS, Plaintiff, *v.* FRENCH NATIONAL RAILROADS, Defendant.

Supreme Court, Special Term, New York County, July 9, 1962.

*Goldstein, Judd & Gurfein* (*Henry B. Hyde, Edward A. Bern-stein, Morton I. Hamburg* and *Murray I. Gurfein* of counsel), for defendant. *Phillips, Nizer, Benjamin, Krim & Ballon* (*Louis Nizer* and *Theodore H. Friedman* of counsel), for plaintiff.

JACOB MARKOWITZ, J. The issues presented on this motion to dismiss the complaint are two: (1) May a court of this State entertain jurisdiction in a tort action by a New York resident against the French National Railroads, the cause of action having arisen in France; and (2) Is a court of this State bound by a provision of French law restricting the venue in which such an action may be brought to France.

The plaintiff, a naturalized citizen and a resident of New York State since 1955, brings this action for personal injuries he suffered in 1960 while a passenger on the defendant's railroad. The defendant, French National Railroads, is a foreign corporation licensed to do and doing business in the County, City and State of New York.

The complaint alleges that the plaintiff visited France in 1960 and that, while there, he travelled as a passenger for hire on the defendant's train. It further alleges that, while the plaintiff was reboarding the train after an ordinary station stop, the defendant's negligence caused him to fall from the train. As a

result of this fall, both of his legs were amputated and he suffered other painful injuries. The complaint is founded on a French statute as well as nonstatutory principles of negligence law.

The defendant was duly served and it has made a general appearance. On this motion to dismiss the complaint, the defendant's affidavits and briefs assert (1) that the assumption of jurisdiction over this action by a New York court would constitute an undue burden on the foreign commerce of a transportation company, in violation of the third clause of section 8 of article I of the United States Constitution and (2) that under controlling French law, the Convention Internationale Concernant le Transport Des Voyaguers et Des Bagages Par Chemins du Fer (CIV), the plaintiff is required to assert his rights against the French National Railroads in the courts of the Republic of France.

In support of its first contention, the defendant alleges that it is a foreign corporation which operates a railroad exclusively in France and has only limited solicitation facilities in New York. It further alleges that its New York facilities were in no way connected with the accident on which the complaint is founded. Finally, it asserts that all of the witnesses it desires to produce in the action are residents of France and that numerous records and police reports necessary to the defense are also in France.

As to its contention that the French law restricts venue in such an action as this to the courts of France, the defendant produces the railroad ticket on which the plaintiff travelled and alleges that it is clearly marked as an " international travel ticket ". Such a notation, under French law, the defendant insists, limits the rights of the traveler to those incorporated in the above referred to, so-called, CIV or International Convention. As to these rights, the defendant purports to prove by lengthy affidavits by French lawyers that the applicable French law provides that an action such as the present one must be brought in the courts of France.

The plaintiff's affidavits in opposition to the motion to dismiss set forth facts intended to prove that the suit in New York would not represent an unreasonable burden on the defendant and that the applicable French law does not preclude a suit in this forum. Thus, the plaintiff avers that he is completely disabled and confined to a wheel chair and that, as a result, he is living under strained financial circumstances. He is presently undergoing rehabilitation treatment. An affidavit by one of his attending physicians characterizes the plaintiff as " essentially helpless " and concludes that he is " not physically fit to travel to France for the purpose of participating in a trial in a French court "—

to do so " would seriously impair and prejudice his health and life ".

Besides these facts concerning his poverty and his physical incapacity to attend to a trial in France, the plaintiff's affidavit also shows that two of the witnesses to the accident who he intends to produce at trial are Americans who would appear in New York but would find it impossible to appear in France. He further alleges that, although he did not purchase the tickets for his trip in New York, he had responded to extensive advertising by the defendant in New York and had visited their New York offices to consult and obtain information about their train services in France.

The plaintiff also produces an affidavit by a French economist which shows that the French government owns the controlling interest in the defendant railroad as well as in the airline, Air France, and the steamship company, French Line. This affidavit also alleges that the defendant's gross receipts in the United States alone exceed $2,000,000 and its business expenditures here exceed $500,000. Its New York office employs some 30 employees and, besides advertising and soliciting trade, this office serves as a large-scale purchasing mission of railroad equipment. Finally, the plaintiff, like the defendant, has submitted extensive affidavits relating to the interpretation to be placed upon the CIV, the controlling French statute. The plaintiff's affidavits, as might have been expected, support the proposition that a suit under the French statute may be brought in New York.

Under all of the circumstances, as they are set forth in the affidavits, this court has concluded that the exercise of jurisdiction in this action by a court of this State would not represent an undue burden on the defendant corporation. Furthermore, whatever the purport of French law as to the venue of such an action, it could not control the exercise of jurisdiction by a court of this State.

We begin with the proposition that: " An action against a foreign corporation may be maintained by a resident of [this] State, or by a domestic corporation, for any cause of action ". This statement, found in section 224 of our General Corporation Law, states an elemental policy of jurisdiction which may not be neglected absent some overriding policy consideration. One of the most important attributes of residence in this State is the availability of our courts (see *Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152, 158–160; *de la Bouillerie* v. *de Vienne*, 300 N. Y. 60, 62; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268; *Wagner* v. *Braunsberg*, 5 A D 2d 564, 566–567).

To be sure, as has already been indicated, there are limitations on the implementation of this policy; as much as we would like to, there are occasions when the exercise of jurisdiction in a suit by a resident would contravene some more important policy consideration or be otherwise inappropriate. The occasions for such a limitation were outlined in the *Gregonis* case (235 N. Y. 152, 160–161, *supra*) and were most recently restated in the *Wagner* case (5 A D 2d 564, 566–567, *supra*) where the court said that the only exceptions to the rule that a resident has " an unqualified right to resort to our courts " were " where the rights of the litigants involve regulation and management of the internal affairs of foreign corporations or when the court is unable to enforce its decree ".

It is, of course, beyond doubt that the mere fact that the action arose outside of the State is not a sufficient ground on which to rest the closing of the doors of our courts to one of our residents (see, e.g., *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 268, *supra; Gregonis* v. *Philadelphia & Reading Coal & Iron Co.,* 235 N. Y. 152, 160, *supra; de la Bouillerie* v. *de Vienne,* 300 N. Y. 60, 62, *supra*). Of more difficulty are the questions of the effect on a resident's " unqualified right to resort to our courts " (*Wagner* v. *Braunsberg,* 5 A D 2d 564, 566, *supra*), of the burdens imposed on a foreign corporation in defending such an action and of a provision of the applicable foreign law restricting venue.

The Federal Constitution provides that " The Congress shall have power * * * [t]o regulate the commerce with foreign Nations, among the several States and with Indian tribes " (art. I, § 8, col. 3) and numerous cases have held this provision to have been contravened where a State court unreasonably assumed jurisdiction in a lawsuit against a foreign corporation (see, e.g., *Davis* v. *Farmers Co-op. Co.,* 262 U. S. 312; *Denver & Rio Grande Western R. R. Co.* v. *Terte,* 284 U. S. 284; *Matter of Baltimore Mail S. S. Co.* v. *Fawcett,* 269 N. Y. 379). The lawsuit, in such cases, represents an undue burden on foreign or interstate commerce, and, as a consequence, an unconstitutional form of State control over such commerce.

Not every occasion of the exercise of State jurisdiction over a foreign corporation imposes an unreasonable and unconstitutional burden, however (see, e.g., *State of Missouri ex rel. St. Louis, Brownsville & Mexico Ry. Co.* v. *Taylor,* 266 U. S. 200; *International Milling Co.* v. *Columbia Transp. Co.,* 292 U. S. 511). The State will only be said to have engaged in unconstitutional control of foreign or interstate commerce by *unduly* burdening it when it *unreasonably* entertains jurisdiction over a foreign corporation. The test of whether a burden is undue or

not was set forth in the *International Milling Co.* case (*supra,* p. 518) as being whether there is "such relation between the residence or activities of the suitor and the forum chosen for the suit as to make the choice a natural or suitable one". Thus, the commerce clause only prohibits unreasonable burdens on foreign commerce by the States and entertaining jurisdiction in a lawsuit against a foreign corporation engaged in foreign commerce only constitutes an unreasonable burden where there is no legitimate and appropriate basis for entertaining such jurisdiction (see McGowan, Litigation as a Burden on Interstate Commerce, 33 Ill. L. Rev. 875, 884–886).

It need not be decided in this case whether the fact that the plaintiff is a bona fide resident of this State — one who has not established residence merely in order to bring suit — is a sufficient basis on which to deny a plea of undue burden. It is enough to say here that the fact that the plaintiff is a bona fide resident "is a fact of high significance" (*International Milling Co.* v. *Columbia Transp. Co.,* 292 U. S. 511, 519–520, *supra*). Add to it that the resident plaintiff here finds it financially impossible to bring suit in France because of his poverty and that he is physically incapacitated from bringing his suit there without grave risk to his health and an almost overwhelming case is made out for showing the appropriateness of New York as a forum. If to these facts are added the extensive nature of the operations the defendant conducts in New York and the fact that the defendant solicited the plaintiff's business in New York and advised him here concerning his travel, the conclusion is irresistible that New York is a proper and reasonable forum for this suit. This being so, there can be no undue burden on foreign commerce if the suit is entertained in New York.

Finally, I turn to the defendant's contention that, even if the assumption of jurisdiction in this case does not represent an undue burden on commerce, it is ruled out by the fact that the applicable French law sets the venue for such an action in France. To begin with, I am constrained to believe that, of the two sets of conflicting affidavits before me on the question whether the French law does contain such a limitation, the plaintiff's version is the more reasonable one. The fact is, however, that I need not resolve such conflict for the simple reason that, even if French law did contain such a provision, it would not be binding on this court.

To be sure, there are cases in which the nature of the remedy established under foreign law is such as to preclude an adjudication of the rights of the parties in another forum (see, e.g., *Slater* v. *Mexican Nat. R. R. Co.,* 194 U. S. 120; cf. *Gregonis* v.

*Philadelphia & Reading Coal & Iron Co.,* 235 N. Y. 152, 160–161, *supra*). The remedy in such cases is integral to the right and is itself a remedy unavailable under the law of the forum. To assume jurisdiction in such a case would represent an injustice to the parties because the applicable law could not be applied.

There is no indication here, however, that the remedy available under French law is any different from the remedy available in a negligence action in our courts. Under such circumstances, it would seem that the only purpose of a venue limitation, if one there is, is to serve the convenience of the French carrier. Considering all of the facts set forth above in determining that this suit does not represent an undue burden on the defendant, this court sees no reason to prefer the convenience of the defendant French carrier over the resident plaintiff. Nor is the court otherwise bound to enforce the foreign provision limiting the venue of an action brought to enforce a foreign right (see *Tennessee Coal Co.* v. *George,* 233 U. S. 354; *Lauritzen* v. *Larsen,* 345 U. S. 571). As the Supreme Court of the United States declared in the *Tennessee Coal* case (*supra,* p. 360): '' [V]enue is no part of the right; and a State cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction. That jurisdiction is to be determined by the law of the court's creation, and cannot be defeated by the extraterritorial operation of a statute of another State, even though it created the right of action.'' In view of the foregoing ground of decision, it is unnecessary to discuss the defendant's offer to pay plaintiff a sum of money to make a trip to France possible, as well as the further question whether a contingent fee arrangement with a French lawyer would be ethical or legal.

Since there is no reason why a court of this State should not entertain jurisdiction over this action, the motion to dismiss the complaint must be denied.